**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02273-WJM-KLM

ONESOURCE COMMERCIAL PROPERTY SERVICES, INC., a Colorado corporation,
and
AFFORDABLE SWEEPING, INC., a Colorado corporation,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, a municipal corporation,
APRIL HENDERSON,
CALVIN BLACK,
KEN GREENE, and
XAVIER DURAN,

    Defendants.

---

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

---

Plaintiffs Onesource Commercial Property Services, Inc. and Affordable Sweeping, Inc., both Caucasian female-owned companies (together "Plaintiffs") bring this action against the City and County of Denver and four of its current and former employees alleging reverse race and gender discrimination in violation of 42 U.S.C. § 1981 and 1983. Before the Court are the following motions: (1) Defendant Calvin Black's Motion for Summary Judgment (ECF No. 116); (2) Defendant City and County of Denver, Xavier Duran, and Ken Greene's Motion for Summary Judgment (ECF No. 117); and (3) Defendant April Henderson's Motion for Summary Judgment (ECF No. 118). For the reasons set forth below, the Motions are granted and judgment shall be entered in favor of Defendants.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTUAL BACKGROUND

The relevant facts, viewed in the light most favorable to Plaintiffs, are as follows:

Plaintiffs are companies that are majority owned and/or operated by white females.  (Aff. of Claudia Baca (ECF No. 132-1) ¶ 9.)  Plaintiffs provide pressure washing, snow removal, and other cleaning services.  (*Id.*)  Defendants April

Henderson, Calvin Black, and Ken Greene are African-American current and former employees of the City and County of Denver ("CCD") at Denver International Airport ("DIA"). (ECF No. 142 at 10.) Defendant Xavier Duran is an Assistant City Attorney for CCD and is Hispanic. (*Id*.)

In August 2007, CCD contacted Onesource about performing pressure washing services at DIA. (Baca Aff. ¶ 13.) Plaintiffs met with Henderson and Black, as representatives of CCD, regarding the possibility of entering into a multi-year contract for pressure washing services. (*Id*. ¶ 19.) Onesource stated that it would be the contracting entity but that Allstate Sweeping would be its subcontractor on the job. (*Id*. ¶ 15.)

In September 2007, CCD issued a purchase order for Plaintiffs to conduct pressure washing services from October 2007 until January 2008. (ECF No. 133-14.) Plaintiffs purchased equipment to do this work and were told that, if they did a good job, they would be awarded the multi-year contract. (Baca Aff. ¶ 19.) Plaintiffs performed these pressure washing services under the supervision of Defendant Black. (Baca Aff. ¶ 23.) Plaintiffs allege that Black micro-managed their work, unilaterally set their work schedule, and assigned tasks in a manner that ensured they would lose money on the project. (Baca Aff. ¶¶ 24-25.)

In February 2008, rather than giving Plaintiffs the multi-year pressure washing contract, CCD put out a request for proposal seeking competitive bids. (ECF No. 133-22 at 8-15.) Plaintiffs attended the required meeting and submitted a formal proposal. (Baca Aff. ¶¶ 29-30.) In May 2008, Plaintiffs learned that AAA Maintenance, an African-American male-owned company, had been selected for the contract. (Baca Aff. ¶ 33.)

In March 2008, CCD also put out a request for proposal seeking competitive bids for a tunnel cleaning contract at DIA.  (ECF No. 133-25.)  Plaintiffs submitted a formal proposal and CCD chose Plaintiffs' proposal to move forward on.  (Baca Aff. ¶ 41; ECF No. 133-12.)  Plaintiffs were informed that they would be awarded a two-year contract worth $780,000 and that they needed to provide a bond for the duration of the contract.  (ECF No 133-6.)  Plaintiffs obtained the requested bond.  (ECF No. 133-25 at 4.)  Allstate Sweeping obtained the necessary equipment for the project.  (Baca Aff. ¶ 42.)

In June 2008, Plaintiffs were told that the project was on hold.  (Baca Aff. ¶ 44.)  Plaintiffs were also informed that they would not be awarded a two-year contract worth $780,000; rather, the contracts would be written as two one-year contracts worth $390,000 each.  (Baca Aff. ¶¶ 44-45.)  Defendants claim that this change was based on CCD's estimate regarding the scope and extent of the work that needed to be performed.  (Greene Aff. (ECF No. 117-3) ¶ 9.)

On December 30, 2008, Plaintiffs were issued a one-year contract worth up to $400,000 in tunnel cleaning services.  (ECF No. 133-25 at 18.)  The contract specified that it expired on December 31, 2009 and that it may be extended by mutual agreement of the parties.  (ECF No. 133-25 at 19.)  Plaintiffs began tunnel cleaning work on February 12, 2009.  (Baca Aff. ¶ 46.)

On October 12, 2009, Plaintiffs were informed that their contract would not be renewed.  (Baca Aff. ¶ 49; ECF No. 133-25 at 20.)  Plaintiffs complained to DIA's manager of aviation, who delegated handling of the issue to Defendants Greene and Duran.  (Baca Aff. ¶ 50; ECF No. 133-25 at 21.)  Prior to this incident, Greene and Duran had not personally handled any contract extensions for CCD.  (Green Aff. ¶ 16.)

Plaintiffs met with Greene and Duran on a number of occasions. (ECF No. 133-25 at 24; Baca Aff. ¶ 51.) During these meetings, Greene and Duran informed Plaintiffs that they were working on an agreement to extend the contract for another full year but that the proposed agreement would need to be presented to City Council for approval. (ECF No. 133-25 at 25; Baca Aff. ¶ 49.) As an interim compromise, on February 2, 2010, Plaintiffs and CCD entered into an agreement, negotiated by Greene and Duran, which allowed Plaintiffs to continue tunnel cleaning work until April 30, 2010 with an additional maximum payout of $90,000. (ECF No. 133-25 at 27-29.)

On April 23, 2010, Plaintiffs received a letter informing them that their contract would not be renewed and that there was no additional work at that time. (ECF No. 133-25 at 32.) Despite their promises to Plaintiffs, Greene and Duran never presented a full second year agreement to City Council. (Baca Aff. 56.) Since Plaintiffs' contract expired, CCD has been handling the tunnel cleaning in-house. (Greene Aff. ¶ 19.)

### III. ANALYSIS

As an initial point, the Court will discuss what claims are still pending in this action. In their Amended Complaint, filed on November 22, 2010, Plaintiffs brought six claims: (1) sex-based discrimination in violation of 42 U.S.C. § 1983 against CCD; (2) sex-based discrimination in violation of 42 U.S.C. § 1983 against the individual defendants; (3) race-based discrimination in violation of 42 U.S.C. §§ 1981 and 1983 against CCD; (4) race-based discrimination in violation of 42 U.S.C. §§ 1981 and 1983 against the individual defendants; (5) violation of 42 U.S.C. § 2000d ("Title VI") against CCD; and (6) negligent hiring and supervision against CCD. (ECF No. 42.) Subsumed within these claims was also what appeared to be a hostile work environment claim

(based on race) against Defendants Henderson, Black, and CCD. (*Id.* ¶¶ 81-82, 95-96.)

However, in the Final Pretrial Order, which was entered on April 26, 2012, Plaintiffs' claims are much more narrow:

> Plaintiffs are companies majority owned and/or operated by white females. These companies provide pressure washing services and other cleaning services. Defendants asked Plaintiffs to begin providing pressure washing services at Denver International Airport (DIA) in October 2007, and tunnel cleaning services in 2008. This lawsuit arises from these Plaintiffs' experiences at DIA.
> Among Plaintiffs' claims is that Defendants discriminated against Plaintiffs on the basis of their race and/or sex when: a) Defendants orally and in writing promised Plaintiffs a multi-year, multi-million dollar contract to provide pressure washing services at DIA, but then gave this contract to a less qualified African American contractor; and b) Defendants promised a two-year tunnel cleaning contract, but then failed to honor their oral promises.

(ECF No. 157 at 2-3.) Plaintiffs do not mention any hostile work environment or conditions of employment claim. They also fail to mention their Title VI and negligent hiring and supervision claims.

The Tenth Circuit has held that "the pretrial order is the controlling document for trial." *Expertise Inc. v. Aetna Financial Co.*, 810 F.2d 968, 973 (10th Cir. 1987). "[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). Modification of the final pretrial order is discouraged. *Koch v. Koch Industries*, 179 F.R.D. 591, 596 (D. Kan. 1998) ("A policy of too-easy modification of pretrial orders not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern at trial.")

Plaintiffs omitted any reference to their Title VI and negligent hiring/supervision claims from the Final Pretrial Order. Additionally, despite the fact that CCD explicitly moved for summary judgment on both the Title VI and negligent hiring/supervision claims, and devoted a separate section of its Motion to each claim, Plaintiffs failed to address these claims in their opposition brief. (*See* ECF No. 117 at 28-30; ECF No. 157.) On this record, the Court finds that Plaintiffs have abandoned these claims and that judgment should be entered on them in favor of Defendants.

Additionally, the Final Pretrial Order only alleges discrimination related to two decisions: (1) the failure to award Plaintiffs the pressure washing contract; and (2) the failure to honor the promise of a two-year tunnel cleaning contract. (ECF No. 157 at 3.) There is no reference to a hostile work environment based on gender or race or to any other perceived mistreatment during the pendency of any contractual relationship. (*Id*.) This shows that Plaintiffs do not intend to pursue any hostile work environment claim at trial and that judgment should be entered in favor of Defendants on those claims as well.

The Court will now address the Motions for Summary Judgment as they relate to the claims that are set forth in the Final Pretrial Order, *i.e.*, race and gender discrimination arising out of the following acts: (1) the failure to award Plaintiffs a multi-year pressure washing contract; and (2) the failure to honor the promise of a two-year tunnel cleaning contract.

A.   **Pressure Washing Contract**

Plaintiffs allege that Defendants Henderson and Black discriminated against

them based on their gender and/or race by failing to award them a multi-year pressure washing contract. (ECF No. 142 at 29.) Plaintiffs allege that Henderson and Black initially promised that Plaintiffs would be awarded this contract but then decided to "steer the 2008 contract to AAA", which is owned by an African-American man. (*Id*.) Although Plaintiffs do not mention CCD in the argument section of their opposition brief, the Court assumes that Plaintiffs are attempting to hold CCD responsible for the actions of its employees through the doctrine of *respondeat superior* or the like. There is no allegation that Defendants Greene or Duran were involved in these events. (Greene Aff. ¶ 8; Duran Aff. ¶ 4.)

Defendant Black contends that any claim related to or arising out of the award of the pressure washing contract is barred by the statute of limitations. (ECF No. 116 at 3-6.) Thus, the Court must determine whether this action was brought within the limitations period for each of Plaintiffs' claims.

  1. <u>Sex Discrimination</u>

To the extent Plaintiffs' claims are based on sex discrimination, these claims are brought under 42 U.S.C. § 1983. (ECF No. 42 at 14.) Federal courts must look to the applicable state statute of limitations to determine the timeliness of a claim under 42 U.S.C. § 1983 and Colorado law provides that a two-year statute of limitation applies. *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). Therefore, a Section 1983 claim must be filed within two years of its accrual to be timely.

The determination of when an action accrues is controlled by federal law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "Section 1983 claims accrue, for the purpose of the statute of limitations, 'when the plaintiff knows or

has reason to know of the injury which is the basis of his action.'" *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (further quotations omitted)). Plaintiffs have repeatedly admitted that they became aware of the fact that the pressure washing contract was awarded to AAA in May 2008. (Am. Compl. ¶ 35; Baca Aff. ¶ 33.) Thus, the Court has little difficulty finding that Plaintiffs' Section 1983 claims arising out of the award of the pressure washing contract accrued in May 2008.

This action was initiated on September 16, 2010, which is more than two years after the claim accrued. (ECF No. 1.) Plaintiffs have proffered no basis for tolling the statute of limitations and have not argued that their claim accrued anytime other than May 2008. The Court therefore finds that any Section 1983 claim related to the pressure washing contract is barred by the statute of limitations.

2. Race Discrimination

Plaintiffs' race discrimination claims related to the pressure washing contract are brought pursuant to both Section 1983 and Section 1981. To the extent they are governed by Section 1983, the analysis set forth above applies and such claims are barred as untimely.

The statute of limitation that governs Plaintiffs' Section 1981 claim depends on whether such claims are brought under Section 1981(a), which typically involves discrimination in the formation of contracts ("pre-formation"), or Section 1981(b), which involves discrimination occurring after the contract has been formed ("post-formation"). *Harris v. Allstate*, 300 F.3d 1183, 1193 (10th Cir. 2002). A claim brought under Section 1981(a) has a two year statute of limitations in Colorado, while a Section 1981(b) claim

is subject to the four year statute of limitations established in 28 U.S.C. § 1658. *See Mitchell v. City and Cty. of Denver*, 112 F. App'x 662, 671 n.9 (10th Cir. 2004).

Plaintiffs allege that Defendants steered the pressure washing contract to an African-American owned company and that the contract was not awarded to Plaintiffs based on their race. (ECF No. 157 at 3.) The nature of these allegations brings this claim within Section 1981(a) as a "pre-formation" claim. *See Harris*, 300 F.3d at 1193 n.1 (claim grounded in failure to form a contract for a discriminatory reason is a "pre-formation" claim governed by 1981(a)). As previously noted, Section 1981(a) claims are subject to a two-year statute of limitation. *Id*. at 1193. Because Plaintiffs' Section 1981(a) claims were not brought within two years of its accrual, they are untimely.

Accordingly, the Court grants Defendants' Motions for Summary Judgment to the extent they seek judgment in Defendants' favor on Plaintiffs' claims arising out of the pressure washing contract.

**B.     Tunnel Cleaning Contract**

Plaintiffs allege that Defendants Greene and Duran violated Sections 1981 and 1983 by failing to follow through on their promise to award Plaintiffs a two-year tunnel cleaning contract. (ECF No. 142 at 31.) Though CCD is not explicitly mentioned in the argument section of Plaintiffs' opposition brief or the Final Pretrial Order, the Court assumes that Plaintiffs are alleging that CCD is responsible for Greene's and Duran's actions by way of *respondeat superior* or the like. There is no allegation that Defendant Black or Henderson was involved in the negotiation or handling of the tunnel cleaning contract.

With respect to this claim, the entirety of the Plaintiffs' argument section of their opposition brief is as follows:

> The facts show that Janzsen told Plaintiffs that the tunnel cleaning contract was for two years, and would be written as two one-year contracts with each being worth $390,000. The facts also show that Greene and Duran promised Plaintiffs that they would prepare and submit to the City Council the second year $390,000 contract for its approval, but failed to do so.
> A reasonable jury could find that Plaintiffs were treated differently than white male owned companies. CAM and Carnation are among the white male owned companies that received multi-year contracts that specifically contain the language stating that it is for one or more years, with two or three year extensions. CAM and Carnation Contract Excerpts, attached as **Exhibit 23**. However, Plaintiffs' contract was for one year, an addendum for 90 days, and a broken promise of an additional year.
> A reasonable jury could find that Defendants' explanation is a pretext to mask a discriminatory motive. Greene and Duran promised Plaintiffs they would prepare and submit to the City Council a second year contract for $390,000. They put this promise in writing. Yet, just a few months later, in April 2010, without any warning, they sent a letter to ASI telling it the contract had ended. At no time before this lawsuit was filed did Greene or Duran tell Plaintiffs that a discussion was held and a business decision was made to move forward with sending the $390,000 contract to the City Council for its approval.

(ECF No. 142 at 31-32 (emphasis in original).)

"[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004). The Court has no obligation to sift through Plaintiffs' evidence to determine if there is a trial-worthy issue as to Plaintiffs' claims. *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court

is "not obligated to comb the record in order to make [Plaintiffs'] arguments for [them].").

Plaintiffs' opposition to the Motions for Summary Judgment utterly fails to meet this burden. There is <u>one</u> citation to the record on this issue and no analysis of the actual elements of these claims. This deficient briefing, in and of itself, is sufficient reason to grant summary judgment in favor of Defendants. *See Mitchell*, 218 F.3d at 1199 (holding summary judgment is appropriate when an opposition is "limited to conclusory statements and . . . void of cites to the specific portions" of the record containing relevant evidence). However, although it is not required to do so, in the interests of justice to Plaintiffs, the Court will proceed to review the merits of their claim.

The familiar *McDonnell-Douglas* burden shifting test applies to Plaintiffs' race and gender discrimination claims. *See McDonnell-Douglas*, Crowe *v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (standard for Section 1981 race discrimination claim is same as Title VII claim); *Randle v. City of Aurora*, 69 F.3d 441, 450 (10th Cir. 1995) (applying *McDonnell-Douglas* framework to Section 1983 discrimination claim). Under *McDonnell Douglas*, Plaintiffs must first establish a *prima facie* case of race and/or gender discrimination. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). If Plaintiffs make out a *prima facie* case, the burden shifts to Defendants to come forward with a legitimate, non-discriminatory basis for their actions. *Id*. If Defendants do so, the inference of discrimination drops out and the burden shifts back to Plaintiffs. At this stage, they must offer evidence to show that race or gender was a motivating factor in Defendants' decision or that Defendants' non-discriminatory reason was merely pretext for discrimination. *Id.*

Assuming, without deciding, that Plaintiffs established a *prima facie* case for both race and gender discrimination[1], the Court finds that Defendants have come forward with a non-discriminatory basis for their actions.  Greene has stated that, although CCD contemplated entering into a two-year tunnel cleaning contract, the decision was made to do a one-year contract based on the "estimation of the full scope and extent of the work required.  (Greene Aff. ¶ 9.)  After the initial contract period, Greene recommended that Plaintiffs' contract only be extended for four months because of "the square footage of work left to be completed in cleaning the tunnels, and the estimated cost of cleaning the remaining area".  (*Id*. ¶ 15.)  Greene has also stated that responsibility for tunnel cleaning was moved in-house and that the contract purportedly promised to Plaintiffs was not offered to anyone else.  (*Id*. ¶ 19.)

The Court finds that this is a legitimate non-discriminatory basis for the failure to renew Plaintiffs' contract.  *See Brown v. Bd. of Regents*, 353 F. App'x 169, 172 (10th Cir. 2009) (end of grant funding is legitimate non-discriminatory basis for non-renewal of position); *Perez v. St. John Med. Ctr.*, 2009 WL 3254926, *14 (N.D. Okla. Oct. 6, 2009) (lack of work is non-discriminatory basis for non-renewal of contract).  Therefore, the burden shifts back to Plaintiffs to show that race or gender was a motivating factor in the non-renewal of their contract or that Defendants' proffered basis for the non-renewal was merely pretext for discrimination.

---

[1] The Court notes that Plaintiffs do not address either of the *prima facie* standards in their opposition to the Motions for Summary Judgment.  Because it is their burden to make out a *prima facie* case, this failure is fatal to their claims.  *See Amro v. Boeing Corp.*, 232 F.3d 790, 799 (10th Cir. 2000) (affirming district court's grant of summary judgment where plaintiff failed to establish a *prima facie* case of discrimination).

Plaintiffs argue that they have shown pretext because they were treated differently than Caucasian male-owned companies such as CAM and Carnation. (ECF No. 142 at 31.) Having reviewed the limited evidence presented by Plaintiffs, the Court finds that these contractors are not similarly situated and, therefore, not appropriate comparators. It is undisputed that Defendants Greene and Duran were the decision-makers in terms of whether Plaintiffs' contract renewal was sent to City Council for renewal. (ECF No. 142 at 19-20.) There is no evidence in the record showing that Greene or Duran was involved in the process that led to CAM or Carnation's multi-year contracts. In fact, the record shows that prior to working with Plaintiffs on their contract issues, neither Greene nor Duran had handled an extension of a vendor's contract. (ECF No. 117 at 10.) Thus, Plaintiffs have failed to show that CAM and Carnation were similarly situated to them for purposes of raising an inference of discrimination. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (similarly situated persons must deal with the same decision-maker).

Plaintiffs also contend that they have shown pretext because Defendants did not tell them that the non-renewal of their contract was a "business decision" until after this litigation commenced. (ECF No. 142 at 32.) However, Plaintiffs admit that they had no warning and were given no reason for the non-renewal of their contract. (Baca Aff. ¶ 55; ECF No. 142 at 32.) Thus, there is no evidence that Defendants have changed the proffered basis for their decision or offered "a bagful of legitimate reasons" that would cause a fact-finder to disbelieve the proffered basis. *See Smith v. Oklahoma ex rel. Tulsa Cty. Dist. Attorney*, 245 F. App'x 807, 817 (10th Cir. 2007) (a shifting basis for an employment decision may show pretext depending on the timing of the shift and the

evidence supporting the newly-proffered basis); *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1311 (10th Cir. 2005) (shifting explanation for employment decision may be evidence of pretext).

The heart of Plaintiffs' claims of pretext relate to unfulfilled promises made to Plaintiffs by Greene and Duran. (ECF No. 142 at 32.) Plaintiffs allege that Greene and Duran promised in writing to submit the second year $390,000 contract to City Council. (*Id.*) It is undisputed that no full-year contract renewal was presented to City Council. (ECF No. 149 at 6.)

The Court finds that these unfulfilled promises are not evidence of pretext as there is no evidence linking these decisions to Plaintiffs' gender or race. Plaintiffs admit that neither Greene nor Duran ever made a race or gender-based comment to them or used derogatory language. (ECF No. 117 at 10; ECF No. 142 at 24.) There is no evidence of prior bias or of later bias on the part of either Defendant. There is no evidence that Defendants have altered their explanation for why they failed to present the contract to City Council. Most importantly, it is undisputed that the $390,000 contract was not offered to anyone else; rather, the tunnel cleaning is now being done in-house. In short, Plaintiffs have utterly failed to put forth any evidence showing that Greene and Duran were motivated by Plaintiffs' race or gender when they decided not to submit the second year of the contract to City Council.

These unfulfilled promises may have given rise to a claim for breach of contract or promissory estoppel,[2] but the failure to follow through on a promise, in and of itself, is

---

[2] The Court notes that Plaintiffs pursued a contract/promissory estoppel action in Denver District Court against CCD and some of its employees. It appears that action was

not evidence of discrimination.  *See Brown v. Bd. of Regents*, 353 F. App'x 169, 172 (10th Cir. 2009) ("bad judgment in making a promise" is not germane to discrimination claim); *Sidique v. Univ. of Pittsburgh*, 2003 WL 22290334, *5 (W.D. Pa. Oct. 3, 2003) (defendant's "duty to fulfill his purported promises . . . would flow from contract law, not employment discrimination").  Plaintiffs have failed to provide any evidence showing that Greene and Duran failed to follow through on their promises due to Plaintiffs' gender or race.

In sum, the Court finds that Plaintiffs have failed to show a genuine dispute of fact as to whether race or gender was a motivating factor in the failure to renew the tunnel cleaning contract.  The Court also finds that Plaintiffs have failed to present any evidence showing that Defendants' proffered basis for their decision was a pretext for discrimination.  Accordingly, Plaintiffs have failed to meet their burden and summary judgment is granted in favor of Defendants Greene and Duran.

Moreover, Plaintiffs have failed to argue any liability on the part of CCD outside of the context of the actions of its employees, Greene and Duran.  In fact, CCD is not mentioned anywhere in the argument section of Plaintiffs' opposition brief.  (ECF No. 142 at 31-32.)  Because the Court has found that summary judgment is appropriate on Plaintiffs' claims against Greene and Duran, the same holds true for any claim against CCD.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

---

disposed of and summary judgment was entered against Plaintiffs.  (ECF No. 149-8.)

1. Defendant Calvin Black's Motion for Summary Judgment (ECF No. 116) is GRANTED;

2. Defendant City and County of Denver, Xavier Duran, and Ken Greene's Motion for Summary Judgment (ECF No. 117) is GRANTED;

3. Defendant April Henderson's Motion for Summary Judgment (ECF No. 118) is GRANTED;

4. The Clerk shall enter judgment in favor of Defendant on all claims. Defendants shall be awarded their costs.

Dated this 2nd day of August, 2012.

BY THE COURT:

*(signature)*

William J. Martínez
United States District Judge